J. W. LIGGETT, Appellant, v. HARRY J. STOOPS et al., Respondents.

Kansas City Court of Appeals, May 25, 1908.

1. **BUILDING CONTRACT:** Construction: Mutuality: Owner: Option. A contract set out in the option between a landowner and a contractor regarding the building, use and disposition of a certain house and grounds is construed and held that the contractor became a part owner in the property and could have compelled the landowner to comply with the agreement to deed the property or sell the same and divide the proceeds, and that it did not give the contractor a mere option to take the property.

2. ———: ———: ———: ———: ———: Mechanics' Liens. *Held*, further, that a builder contracting with the said contractor to build a house was the original contractor and could enforce his lien as such and it was not necessary to give notice as a subcontractor should do.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune,* Judge.

REVERSED AND REMANDED (*with directions*).

*Botsford, Deatherage & Young* for appellant.

(1)    We submit that according to said contract Stoops and Pratt became partners, but it is not material that this court should hold that they were such partners.    If they were not partners, but were joint tenants or tenants in common, or became jointly interested in the enterprise of putting up said building and selling

and disposing of the same at a profit, then they were "owners" within the meaning of the mechanic's lien law and the sale of the material by plaintiff's assignor and the use of the same in said building entitled plaintiff to a lien, even if Stoops and Pratt did not become commercial partners. However, there are many authorities to the effect that they became partners. Tobert v. Jeffrey, 161 Mo. 655; Hughes v. Ewing, 162 Mo. 295; 1 Bates on Partnership, 445; Colyer on Partnership (6 Ed.), sec. 16, p. 93; Wetmore v. Crouch, 150 Mo. 682; Hazel v. Clark, 89 Mo. App. 83; Mackie v. Mott, 146 Mo. 254; McDonald v. Matney, 82 Mo. 365. (2) Even if Pratt was not bound personally for the payment of the account sued for herein, still plaintiff was entitled to maintain a mechanic's lien against the interest of Pratt in the house and real estate in question, because he had authorized Stoops to purchase the material to be used in this building by the terms of said contract in question. O'Leary v. Rowe, 45 Mo. App. 567; McCarty v. Portland, 71 Me. 318; Iron Co. v. Dodson, 75 Tenn. 371; Putnam v. Ross, 46 Mo. 337; DeWitt v. Smith, 63 Mo. 263; Dugan v. Gray, 114 Mo. 497; Hicks v. Schofield, 121 Mo. 381; Madden v. Realty Co., 75 Mo. App. 358; Henry v. Plitt, 84 Mo. 240; Murphy v. Murphy, 22 Mo. App. 18; Nelson v. Withrow, 14 Mo. App. 270; Jonte v. Gill, 39 S. W. 750; Ragan v. Howard, 97 Tenn. 334; Judd v. Duncan, 9 Mo. App. 417; Short v. Stevens, 92 Mo. App. 155; Lumber Co. v. Clark, 172 Mo. 588; Moore v. Jackson, 49 Cal. 109; Paulson v. Manske, 126 Ill. 72; Blake v. Pitcher, 46 Md. 453; Shapleigh v. Hill, 21 Col. 419, 41 Pac. 1108; Henderson v. Connelly, 123 Ill. 98; Lumber Co. v. Jones, 167 Ill. 203; Crandall v. Sorg, 198 Ill. 62; Jameson v. Gill, 98 Iowa 490; Shearer v. Williams, 56 Kan. 252; Hilton v. Merrill, 106 Mass. 528; Davis v. Humphrey, 112 Mass. 309; Carew v. Stubbs, 155 Mass. 549, 30 N. E. 219; Cue v. Whitehall, 156 Mass. 205, 30 N. E. 1134; Borden v. Mercer, 133

Mass. 7, 39 N. E. 413; Hill v. Gille, 43 Minn. 441, 42 N. W. 294; Sheehy v. Fulton, 38 Neb. 691, 57 N. W. 395; Lumber Co. v. Mosher, 88 Wis. 672, 60 N. W. 264; Lumber Co. v. Nelson, 71 Mo. App. 119; Kuenzel v. Stevens, 155 Mo. 280; Burgwald v. Weippert, 49 Mo. 60; Price v. Merritt, 55 Mo. App. 640; Winslow Bros. Co. v. McCully Stone Mason Co., 169 Mo. 236; 20 Am. and Eng. Ency., 303, 312, 314, 315, 322, 328, 331.   (3)   We also cite in support of our contention the following very recent adjudications of this court which are in point fully supporting our contentions in this case. . Curtin-Clark Co. v. Churchill, 104 S. W. 476; Lumber Co. v. Churchill 114 Mo. App. 528.

*Charles W. German* for respondent.

(1)   By the contract and the testimony it is proclaimed and shown conclusively that the relationship between the parties was simply the ordinary one of owner and contractor.   In support of our contention as to the relationship between the parties, we respectfully call the court's attention to the following cases: Hazell v. Clark, 89 Mo. App. 81; Mackie v. Mott, 146 Mo. 230; Hughes v. Ewing, 162 Mo. 261; Hardware Co. v. McCleverty, 89 Mo. App. 154; Campbell v. Dent, 54 Mo. 325; Newspaper Co. v. Farrell, 88 Mo. 594; Bank v. Outhwaite, 50 Mo. App. 124; Deerle v. Hunt, 50 Mo. App. 541; Ashby v. Shaw, 82 Mo. 76; Newberger v. Friede, 23 Mo. App. 631; Soallings v. Baker, 15 Mo. 481; Musser v. Brink, 68 Mo. 242; Beatty v. Clarkson, 110 Mo. App. 1; Johnston v. Johnston, 173 Mo. 113; Laperye v. Paul, 47 Mo. 587.

BROADDUS, P. J.—This is a suit under the Mechanics' Lien Law.   The plaintiff is the assignee of the Red Cypress Door & Sash Company.   That company furnished material in the erection of a building on a certain lot in Pratt's Park Addition to Kansas City

of the value of $614.59, and took the necessary steps to create a lien on the lot if it was an original contractor. · If not such contractor no lien was created because of its failure to give the statutory notice of ten days to the owner of the building before the filing of the lien. The contract for furnishing the material in question was made with the defendant Stoops. The validity of the lien rests mainly upon the fact whether he was a part owner of the building by reason of a certain contract entered into between the defendants which reads as follows:

"This contract of agreement made and entered into this first day of April, 1903, by and between C. H. Pratt, party of the first part and Harry Stoops, party of the second part, witnesseth: This agreement is for the purpose of building a two-story brick house with slate roof. The house to cost when completed about $3,500, and to contain not less than eight rooms besides bathroom, closets, etc., to be located on forty-five front feet of ground, being the south twenty-one feet of Lot 2 and the North twenty-four feet of Lot 3 in C. H. Pratt's Park Avenue Addition to Kansas City, Mo., fronting on Olive street. Said Pratt, his executor or administrator hereby agrees to furnish the ground at $30 per front foot, free and clear of all incumbrances and is also to furnish $2,350 in cash as work progresses, twelve hundred dollars to be paid to said Stoops, his executor or administrator, when the house is under roof and eleven hundred and fifty dollars when house is completed. Said Stoop, his executor or administrator, is to do all the work, furnish all material and pay out the said $2,350 in doing so, together with other moneys of his own, if any more is required to complete the house in a first-class, workmanlike manner, with modern improvements. Work to commence within fifteen days after the signing of this contract and house to be completed on or before ninety days thereafter. Said Stoops, his

executor or administrator hereby agrees to keep a separate account of costs of material and cost of labor in and upon said house and take receipted bills for each in full.    No overcharge shall appear or be on any bill more than was actually paid for work done and for material when house is completed according to contract. Said Stoops, his executor or administrator, shall have the first opportunity to purchase the house and ground if he desires it for his own use by paying said Pratt, his executor or administrator, the amount of money he has advanced, with six per cent interest from April 1, 1903.    Also to pay for the ground as specified, with interest from April 1, 1903, he is also to pay said Pratt, his executor or administrator, profit on the deal, but if said Stoops, his executor or administrator, should not decide when house is completed to take it for his own use, then by mutual agreement a price shall be fixed on said house that it may be sold for, by either party, and when sold said Pratt, his executor or administrator, shall have only one-third of the net profits after paying all bills as set forth in above contract.    The intention of above contract is as follows:    Said Pratt, his executor or administrator, is to furnish the ground and $2,350 in cash.    The ground is put in at $30 per front foot or $1,350, making $3,700 on which he is to receive six per cent interest from April 1, 1903, until sold or otherwise arranged for.    If when house is completed said Stoops, his executor or administrator, decide to buy the house for his own private use, he is to have the right to do so by paying said Pratt, his executor or administrator, $250 in addition to the $3,700 and interest from April 1, 1903.    If said Stoops, his executor or administrator, does not elect to take the house for his own private use, then by mutual agreement a price is to be fixed on said house and grounds and either party may sell at that price and after deducting the $3,700 and interest as above, one-third of the net profits

on sale shall be paid to said Pratt his executor or administrator.    The balance to be paid to said Stoops, his executor or administrator.

"In testimony whereof the said parties have hereunto set their hands and' seals the day and year first above written.

"HARRY STOOPS,     (Seal)
"C. H. PRATT."     (Seal)

The court held that the contract in question was a mere option whereby Stoops might become owner and that he was not a partner with Pratt in the lot and building.    This was not the construction put upon the writing by the parties to it, and not such as it admits of.    The parties said themselves what they meant and sum it up in plain and unmistakable language. Briefly stated it is thus.    Pratt puts into the venture his lot valued at $1,350, and $2,350, on 'which he is to have interest from a certain date.    It was provided that Stoops was to erect the house for the sum of $2,350, if it was sufficient, if not he was to furnish what was required for the purpose.    When the house should be completed Stoops had the right to elect, to buy the house for his own private use by paying said $3,700, with interest and $250, to Pratt, or if he did not so elect then the parties by mutual agreement were to fix a price on the property, and when that was done he as well as Pratt had the right to sell at the price fixed and after Pratt's $3,700 with interest and one-third of the net profits were paid to him the balance of the proceeds were to go to Stoops.    There can be no question but what Stoops was to be a part owner in the property by the terms of the contract and that he could have compelled Pratt, had he himself complied with his agreement, to deed to him the property or elected to have compelled an accounting and obtained a decree for a sale and distribution of the proceeds according to the terms of the contract.

Liggett v. Stoops.

The opinion of the referee which was adopted by the court was as follows: "In the opinion of the referee it was not a sale nor a mutually binding contract for a sale and it is not apparent how it could vest an interest in defendant Stoops and yet he not be bound by it, and if he had no vested property right in the land, it is not easy to see how he can claim joint ownership." The opinion concludes: "It. is held, therefore, that no interest in said property vested in Mr. Stoops and that, therefore no agency could arise by virtue of joint ownership." Waiving the question of joint ownership which is not a necessary element in the case to constitute Stoops an owner, it seems that the referee and the court misconstrued the contract as to its binding effect on defendant Stoops. And that the court indulged in the view that there was nothing to bind Stoops and that the contract lacked the binding force of mutuality. Plainly this was a wrong conclusion. By the terms of the contract Pratt was to furnish Stoops with $2,350, in cash in consideration for which the latter was to erect the house whether it cost more or less than that sum. It is true that Pratt could not have compelled Stoops either in a court of law or equity, to erect the house, but the contract could have been enforced by Pratt in a court of law in a suit for damages, for Stoops' failure to comply with its terms in that particular. But Stoops did comply with the contract, therefore he was part owner of the house.

To us the solution of the question seems to be as free from doubt as a simple problem in mathematics, a statement of which is all that is required. The cause is reversed with direction to enter a judgment for the plaintiff for the amount of the lien and interest. All concur.